Libbey-Owens-Ford Company, Petitioner *v.* Commonwealth of Pennsylvania, Unemployment Compensation Board of Review and Rudolf J. Svitek, Jr. et al., Respondents.

Argued December 5, 1978, before President Judge Bowman and Judges Crumlish, Jr., Mencer, Rogers, Blatt, DiSalle and Craig. Judges Wilkinson, Jr. and MacPhail did not participate.

*Michael C. Fox,* with him *James H. Stewart, Jr.,* and *Nauman, Smith, Shissler & Hall,* for appellant.

*Reese Couch,* Assistant Attorney General, with him *Gerald Gornish,* Attorney General, for appellee.

Opinion by Judge Crumlish, Jr., May 7, 1979:

The Unemployment Compensation Board of Review (Board) affirmed a referee's award of benefits to Rudolf J. Svitek, Jr.[1] His employer, Libbey-Owens-Ford Company, appealed. The issue for determination is whether Svitek was "indefinitely separated from his employment" within the meaning of Section 404(d)(ii) of the Unemployment Compensation Law (Act)[2] so that benefits received during the plant shut-

---

[1] The unemployment compensation authorities intended that the decision in this case control the outcome of 28 other applications for benefits made by fellow employees of Svitek, Claimant. Each claimant was entitled to vacation with pay, and each claimant had at least one week of paid vacation remaining when the plant closed.

[2] Act of December 5, 1936, Second Ex. Sess., P.L. (1937) 2897, *as amended,* 43 P.S. §804(d)(ii).

down would not be reduced by vacation pay.[3] We reverse.

Svitek was employed at Libbey Mirror, a division of Libbey-Owens-Ford Company (Employer). In June, 1975, the plant was closed for one week, designated "vacation" time by plant management, during which all employees, on due proper notice, were compelled to use at least one week of their remaining vacation allowance.[4] Management was empowered to do this under the provision of its Labor Agreement with United Glass and Ceramic Workers of North America.

Employer posted two notices of the Company's intentions on plant bulletin boards next to employee time clocks. The first notice, dated May 13, 1975, stated that the plant would close operations on June 27, 1975, at 12 o'clock A.M. and reopen July 7, 1975 at 12 o'clock A.M. The second notice, dated June 24, 1975, read substantially the same as the May 13 notice with two exceptions:

1. The reopening date was moved forward to July 6, 1975.

2. The notice was captioned "Vacation Notice."

Operations were resumed as scheduled on July 6, 1975. All employees affected by the layoff had received their vacation pay in a lump sum prior to the layoff.

---

[3] Section 404(d)(ii) reads in pertinent part as follows:

(d) Notwithstanding any other provisions of this section each eligible employe who is unemployed with respect to any week ending subsequent to the first day of July, one thousand nine hundred seventy-four, shall be paid, with respect to such week, compensation in an amount equal to his weekly benefit rate less the total of . . . (ii) vacation pay, if any, which is in excess of his partial benefit credit, except when paid to an employe who is permanently or indefinitely separated from his employment. . . .

[4] With the exception of the maintenance department which remained in operation throughout the shutdown.

Svitek, an affected employee, applied for unemployment compensation benefits to the Bureau[5] on July 1, 1975, for the week of June 29, 1975, through July 5, 1975. The referee, after a hearing, reversed the Bureau's denial of benefits. The Board affirmed the referee and found:

7. The employer, at the time the plant was closed on June 29, 1975 did not know if the claimant would be recalled to work when the plant resumed operations the following week.

On the basis of this finding, the Board reasoned that Svitek had been laid off for an indefinite period of time and concluded as a matter of law that the vacation pay which he had received for compensation week ending July 5, 1975, could not be deducted from the weekly unemployment benefit rate under the provisions of Section 404(d)(ii) of the Act.

Employer argues that the Board's finding of fact No. 7 is not supported by substantial evidence and that its conclusions of law cannot be sustained without capricious disregard of competent evidence.

We have addressed the meaning of the term "indefinitely separated from his employment" in the context of Section 404(d)(ii) on two prior occasions and have held that a claimant is not "indefinitely separated from his employment" when:

1. the separation period is fixed as to length;

2. the employee has knowledge of when he is to return to his employment; and

3. there is no evidence which indicates an intent on the part of the employer not to recall the employee.

See *United State Steel Corp. v. Unemployment Compensation Board of Review*, 28 Pa. Commonwealth Ct.

---

[5] Bureau of Employment Security.

445, 368 A.2d 1319 (1977); *United States Steel Corp.*
*v. Unemployment Compensation Board of Review,* 9
Pa. Commonwealth Ct. 206, 303 A.2d 852 (1973).
Applying this standard to the facts before us, we
conclude that Svitek was not "indefinitely separated
from his employment."

*First*: The separation period was not indefinite
but fixed, as early as one month before it began,
at one week's duration. The notices of May 13, 1975
and June 24, 1975 gave a starting date and an ending
date for the shutdown; the Board's findings of fact
are deficient in that they fail to include this. More-
over, the shutdown was not made indefinite by the
mere fact that the date anticipated for recall fluctu-
ated slightly, prior to the actual shutdown. In the
absence of evidence which establishes an intent on the
part of the Employer that the shutdown continue be-
yond the specified date, the fact that the date of re-
turn is approximated or estimated does not vitiate
the fact that a time limit was placed on the shut-
down. *United States Steel Corp. v. Unemployment
Compensation Board of Review,* 28 Pa. Commonwealth
Ct. 445, 368 A.2d 1319 (1977).

*Second*: Notice of the shutdown was prominently
displayed. In these circumstances employees may be
properly charged with knowledge of its contents and
hence with knowledge of the expected date of recall,
July 6, 1975.

*Third*: The evidence is insufficient to support the
finding of the Board that at the time of the shutdown
Employer did not know whether Svitek would be re-
called to work. Absent such evidence, the remaining
findings of fact are insufficient to support the Board's
conclusion of law.

At the hearings before the referee, Employer tes-
tified that he did not intend the shutdown to continue
beyond the date specified for recall; that he intended

to recall all employees on July 6, 1975; that all employees were in fact recalled on July 6, 1975; that the plant traditionally closed for two weeks in June and July; that this year the plant had been closed for only one week due to the increased work load.

On behalf of Svitek, Claimant, a union official testified that at the time of the shutdown, the Employer did not "guarantee" that all employees would be recalled. The witness did not state that the employees actually requested such a guarantee and admitted upon further questioning that his testimony regarding the possibility of an extended layoff was not necessarily correct, that it was based upon assumptions, and that it was also possible that all employees would be recalled and additional employees hired.

Findings of the Board based upon a witness's speculation as to what might occur in the future, with no sound basis in fact, are not supported by substantial evidence and shall not bind this Court. Moreover, while the " 'indefinite nature' of a separation can be ascertained from the possibility that an employe will not be called back to work at all . . . ," *United States Steel Corp. v. Unemployment Compensation Board of Review,* 9 Pa. Commonwealth Ct. 206, 209, 303 A. 2d 852, 855 (1973), the mere failure of an employer to guarantee that a specific employee or that all employees will be recalled after the shutdown, without other evidence, is not sufficient to make a separation of definite duration "indefinite" within the meaning of Section 404(d)(ii) or to support a finding that the employer did not know with reasonable certainty that the employee(s) would be recalled after the shutdown.

We therefore

ORDER

AND Now, this 7th day of May, 1979, the decision of the Unemployment Compensation Board of Review is hereby reversed.