United States Steel Corporation, Petitioner *v.* Commonwealth of Pennsylvania, Unemployment Compensation Board of Review, Respondent.

Submitted on briefs November 29, 1984, to Judges MacPhail, Doyle and Barry, sitting as a panel of three.

*Dawne E. Sepanski,* for petitioner.

*Charles G. Hasson,* Acting Deputy Chief Counsel, for respondent.

Opinion by Judge Barry, March 7, 1985:

This appeal results from an order of the Unemployment Compensation Board of Review (Board) which reversed a decision of a referee denying benefits for two weeks to 537 claimants.

United States Steel Mining Company, Inc., a subsidiary of United States Steel Corporation (employer), operates the Maple Creek Mine. On June 22, 1982, the employer notified officials of Local 1243 of the United Mine Workers (the union), the bargaining representative of the claimants, that the mine would be shut down on June 23, 1982. At that time, the employer informed the union that its members could expect to be recalled on August 9, 1982.

Pursuant to a labor management agreement between the employer and the union, a contractual vaca-

tion period for all union members had been scheduled for the weeks beginning July 11, 1982 and July 18, 1982. The claimants' vacation pay exceeded their weekly benefit rate plus their partial benefit credit.

The claimants were not recalled on August 9, 1982. The employer informed the union officials on August 10, 1982 that the recall had not occurred because of economic conditions and no orders for coal. The employer estimated it would recommence operations on August 30, 1982, when, in fact, 300 of the claimants were recalled to prepare the mine for operation. All employees were recalled by September 7, 1982.

The Office of Employment Security (OES) denied benefits for the two weeks of vacation based on Section 404(d)(ii) of the Unemployment Compensation Law, Act of December 5, 1936, Second Ex. Sess., P.L. (1937) 2897, *as amended*, 43 P.S. §804(d)(ii) (Supp. 1965-83), which provides:

> Notwithstanding any other provisions of this section each eligible employe who is unemployed with respect to any week ending subsequent to July 1, 1980 shall be paid, with respect to such week, compensation in an amount equal to his weekly benefit rate less the total of . . . (ii) vacation pay, if any, which is in excess of his partial benefit credit, *except when paid to an employe who is permanently or indefinitely separated from his employment. . . .* (Emphasis added.)

As each of the claimants' vacation pay exceeded his or her weekly benefits plus the partial benefit credit, claimants were ruled ineligible for that two-week period.

Each of the 537 claimants filed individual appeals. The parties agreed that claimant Arthur David would

represent the claims of his co-employees. Following a hearing, the referee concluded that the lay-off was of definite duration and, therefore, he affirmed the determination of the OES.

Claimant, in his representative capacity, appealed to the Board, which concluded that "the employer did not know with reasonable certainty that the employees would be recalled after the shutdown". (Board's Decision and Order, June 9, 1983.) This conclusion was essentially bottomed on the two following findings of fact:

> 5. At that time the employer did not immediately communicate the duration of the lay-off but when pressed by the Union, gave a tentative recall date of August 9, 1982.
>
> . . . .
>
> 8. The employees were not recalled by August 9, 1982 and by letter dated August 10, 1982, Gary F. Crossland (an employer representative) informed the Office of Employment Security that the "expected date of recall scheduled for August 9, 1982 was unable to be met due to economic conditions and a lack of orders for coal." The employer representative further stated: "We hope to begin operations later this month, but the date of August 30, 1982 is only an estimate."

*Id.* The Board, therefore, reversed the referee and awarded benefits. This appeal followed.

The question in this case is whether the factual findings support a legal conclusion that the shutdown was of indefinite duration. In *Libbey-Owens-Ford Company v. Unemployment Compensation Board of Review,* 42 Pa. Commonwealth Ct. 430, 433, 400 A.2d 1353, 1355 (1979), we stated:

We have addressed the meaning of the term "indefinitely separated from his employment" in the context of Section 404(d)(ii) on two prior occasions and have held that a claimant is not "indefinitely separated from his employment" when:

1.  the separation period is fixed as to length;

2.  the employee has knowledge of when he is to return to his employment; and

3.  there is no evidence which indicates an intent on the part of the employer not to recall the employee.

*See* United States Steel Corp. v. Unemployment Compensation Board of Review, 28 Pa. Cmwlth. 445, 368 A.2d 1319 (1977); United States Steel Corp. v. Unemployment Compensation Board of Review, 9 Pa. Cmwlth. 206, 303 A.2d 852 (1973).

In the present case, the Board reached the legal conclusion that the separation was indefinite because the recall date of August 9 was tentative. In *United States Steel Corporation v. Unemployment Compensation Board of Review,* 28 Pa. Commonwealth Ct. 445, 452-53, 368 A.2d 1319, 1323 (1977), we stated:

The referee placed undue emphasis on the words "estimated" and "approximately" in the notice. Employer's use of those words does not vitiate the fact that a time limit was placed on this shutdown, unlike the completely open-ended shutdown in United States Steel, [9 Pa. Commonwealth Ct. 206, 303 A.2d 852 (1973)]. Here, there is no evidence that Employer ever intended the shutdown to continue beyond March 22. When Employer specified

a date upon which the shutdown was expected to end, he saved layoffs occurring during the shutdown from the "indefinite separation" category.

Furthermore.

> [t]he fact that an employer is constantly in the process of reevaluating variable market conditions or that the recall does not occur exactly on the date specified, where, as here, there was a reasonable explanation of why the recall date was not met, is not relevant. The records reflect that the shutdowns were fixed to terminate on a date certain based on an analysis of market conditions existing at the time of the layoff.

*United States Steel Corporation v. Unemployment Compensation Board of Review,* 41 Pa. Commonwealth Ct. 431, 435-36, 399 A.2d 462, 464 (1979).

The fact that the actual recall date did not occur until three or four weeks after the initial expected recall date does not compel the conclusion that the separation was indefinite. A situation could arise where the eventual recall date occurs such a long period after the expected recall date that it would be clear that the expected recall date was based on mere speculation. Suffice it to say that the time periods involved here do not require such a conclusion.

Reversed.

### ORDER

Now, March 7, 1985, the June 9, 1983 order of the Unemployment Compensation Board of Review, at No. B-218790, is reversed.

Judge WILLIAMS, JR., did not participate in the decision in this case.